Johnson, C. J.
This corporation was formed under sections 3686, 3687, 3688, 3689 and 3690 of the Revised Statutes, which are as follows:
“ Section 3686. Any number of persons of lawful age, residents of this state, not less than ten in number, may associate themselves together for the purpose of insuring each other against loss by fire, and may make, assess, and collect upon and from each other such sums of money, from time to time, as may be necessary to pay losses which occur by fire to any member of such association ; and the assessment and collection of such - sums of money shall be regulated by the constitution and by-laws of the association.
“ Section 3687. Such persons shall make and subscribe a certificate, setting forth therein—
'1. The name by which the association shall be known.
2. The place which shall be regarded as its center or business office.
3. The object of the association shall only be to enable its *561 members to insure each other against loss by fire and other casualties, and to enforce any contract which may be by them entered into by which those entering therein shall agree to be assessed specifically for incidental purposes, and for the payment of losses which occur to its members.
■ “ Section 3688. The certificate shall be filed in the office of the Secretary of State, and a copy thereof, duly certified by the Secretary of State, shall be evidence of the existence and due incorporation of the association for the purposes therein named.
“ Section 3689. When such certificate is so filed, and a copy thereof, so certified, forwarded to the association, the persons named therein shall elect their directors, and a president, secretary, and treasurer, and such other officers as may be necessary for the complete performance of all the business and objects of the association herein provided, to serve for one year; such officers shall thereafter be elected annually by the members of the association, at such time as shall be fixed upon in the constitution ; and such association so organized shall be known and held to be a body corporate for all the purposes aforesaid, and may sue and be sued, and plead and be impleaded, in all courts of law and equity ; but in no instance shall the power to insure against losses by fire be exercised to other than members of the association.
“ Section 3690. Every such association shall adopt such constitution and by-laws not inconsistent with the constitution and laws of this state or of the United States, as will, in the judgment of its members, best subserve the interests and purposes of the association; and all persons who sign such constitution shall be considered and held to be members of the association, and shall be held in law to comply with all the provisions and requirements of the association; and the president or vice-president and secretary of every such association shall, annually, on the first day of January, or within thirty days thereafter, prepare under oath and deposit in the office of the superintendent of insurance a statement of the condition of such association on the thirty-first day of December then next preceding, exhibiting such facts as are enumerated *562 m section tliirty-six hundred and fifty-four [3654], and applicable to such associations and such other information necessary to reveal the financial condition of such associations as the superintendent may require, in a printed form to be by him supplied to such associations for that purpose, and every ■such association which fails to make and deposit such statement or to reply to an inquiry of the superintendant, shall be subject to a penalty of five hundred dollars and an additional five hundred dollars for every month that it continues thereafter to transact any business of insurance.” [80 v. 197.]
The declared object of the association, as stated in the certificate of incorporation was :
“Third.' That the object of the association shall be to enable its members to insure each other against loss by fire and other casualties, and to enforce any contract which may be by them entered into, by which those entering therein shall agree to be assessed specifically for incidental purposes, and for the payment of losses which occur to its members
They adopted a constitution and by-laws and issued policies of insurance, not on the plan of specific assessments, to pay expenses and losses as they should occur, but upon what is termed “ the deposit plan.” Instead of assessing its members from time to time to pay incidental expenses and losses, they are required to pay an annual deposit in. advance each year their policy runs. The amount of this annual deposit is based upon the hazards of the risk, estimated by the executive officers of the association.
The members are entitled to dividends out of saving, to be declared each year. The power of the association to assess its members is thus limited.
“Artiom X. The assessment liability of members shall be for each year of the term of the contract, equal in amount to the annual deposit, but in no case shall any member be assessed in one year for an amount exceeding the annual deposit.”
It is also provided in the by-laws, that:
“ N o. 5. All contracts of indemnity on which annual deposits shall fall due and not be paid, shall be deemed void *563 until such animal deposits shall have been received by the association, and all contracts on which assessments have been made, and notice thereof given to the member, shall be void if not paid within thirty days from date of notice.”
In a circular issued to the public is the following :
Cincinnati, Ohio, April’!, 1884.
Guaranty Capital . . $152,538.47
Surplus .... 16,742.66
Total Assets . . . $169,281.13
No Unpaid Losses.
By “ Guaranty Capital,” is not meant any actual capital, but simply the aggregate amount of promises by members to pay future annual deposits.
Thus, a policy which has five years to run, has four .annual deposits to be paid at the commencement of each year, and the amount of so called guarantee capital is the amount of -the five annual deposits on such policy. It requires no legal acumen to see that this advertised “ guarantee capital ” is a mere fiction, well calculated, if not intended to deceive the public. The same is true as to what is called “ aggregate capital.” As the by-laws provide that on failure to pay an annual deposit, the policy shall be void, it is evident that these promises to pay annual deposits, are not absolute contracts to pay the money, but merely promises to be performed at the will of the members, and, therefore, only conditionally assets of the company, payable if assessments become necessary. The “ surplus,” which is advertised is also deceptive in its nature.
As explained by the officers, it means the excess of assets over liabilities, and not a particular fund set apart to cover losses, or for re-insurance.
If their valuation of the assets is too high as is generally the case, or their liabilities are greater than their books show, then this so-called surplus might amount to nothing.
The provisions of the statute above cited, and under which the defendant is incorporated, are very general in their terms. In view of the important interests involved, by introducing a new system of fire insurance into this state before unknown, *564 it is to be regretted that such safeguards as are proper have not been provided, specific as to the mode and manner of transacting business.
These sections, however, do place a specific limitation on the powers of such corporations. So far as these limitations apply to the case at’bar we will state them.
1. They do not authorize the organization of a corporation having a capital stock, and its members are not stockholders in that sense which subjects them to individual liability to an amount equal to his stock in addition thereto. 2. Such corporations cannot be organized with a view to -profit. The law imposes a trust upon the officers for the mutual benefit of all the members, and permits insurance, the losses to be paid by specific assessments upon members. They may assess and collect upon and from each other such sums of money, from time to time, as may be necessary for incidental purposes, as well as losses which occur to its members.
These incidental purposes include the necessary expenses of administering the trust. Any scheme of management which contemplates profits or dividends is imauthorized.
3. This corporation is not formed upon the theory of specific assessments upon members made, from time to time, to pay losses as they occur, but upon what is called the annual “ deposit plan.” An estimated amount, determined by the hazards of the risk, is fixed by previous contract with each member, which he pays annually in advance, in lieu of a specific assessment made, from time to time, as losses occur.
By the terms of this contract, “the assessment liability of members shall be for each year of the term of the contract equal in amount to the annual deposit, but in no case shall any member be assessed in one year for an amount exceeding the annual deposit.”
Thus the liability of members to assessment is expressly limited, regardless of the losses to be paid during any given year. Some doubt is expressed as to the true meaning of the provision above quoted. Whether it means that the payment of the annual deposit frees a member from an assessment during that year, or limits the assessment during the year to *565 an additional amount equal to sucb deposit, it is immaterial now to decide, as in either view, it is a limit on the assessment liability of members, which is unauthorized. Every member who meets with a loss is entitled to call upon his fellow members to share it with him, and these fellow membeis owe it as a duty to contribute sufficient for that purpose.
The present scheme, is radically wrong. It seeks to relieve members from this burden, and may deprive the insured of his full indemnity, unless the corporation borrows money in anticipation of the receipt of future annual deposits, which it has no right to do, The evidence shows that the defendant has been compelled to borrow money for this purpose. It may be said that members have agreed to such limit to their assessment liability, and therefore the maxim volenti jit non injuria applies. To this we answer that we are called upon to determine what are the rights and powers of this corporation, and whether they are exercising franchises and privileges not granted, and not what are the rights of members uuder this contract of indemnity.
4. The statute contemplates speeijic assessments of members, from time to time, to pay losses as they occur. These assessments must be devoted to the payment of such losses so far as may be needed. No member can be assessed to pay a loss, which did not occur during his membership. Hence, the use of funds derived from members, to pay losses prior to their becoming such, or after they cease to be such, is unauthorized.
This corporation is not authorized to borrow money to pay losses expecting to be reimbursed from future payments of annual deposit by new members.
5. This corporation had no power to purchase the property of a similar corporation which had been doing business at Canton, Ohio. The assests which it received by virtue of that purchase amounted to $21,633.56, of this amount $13,000 was the estimated value of real estate in Canton, not needed or used nor necessary for its corporate business, and which under the statute it had no right to buy.
For the first six months of its- business it received in the *566 way of annual deposits or premiums from its members $23,201.25, and during the same time paid sundry liabilities of the Canton company in the sum of $18,687.58, thus devoting a large amount of money collected from its members, as but little of the assets of the Canton company had been converted into cash, to pay losses and other liabilities of the latter company.
6. The evidence shows that this company is engaged in a general fire insurance business, as distinguished from a cooperative mutual company upon the assessment plan.
The “ annual deposit,” required, is but another name for annual premiums. If these annual deposits exceed the necessary expenses and losses, during a given year, they are treated as “ savings” out of which dividends are made to those who may then be members. As a consequence, if the annual deposits exceed the expenses and losses, there is a net profit to be divided or carried forward each year, derived from those who may not be members the next year, but if expenses and losses exceed the receipts from such source during a given year, the deficit becomes a burden upon succeeding members, equally with those who were members when the losses occurred, and so continued. Those who were members when the loss occurred, and ceased to be such before the deficit was ascertained, were free from this burden.
7. By-law No. 5 provides, “All contracts of indemnity on which annual deposits shall fall due and not be paid, shall be deemed void until such annual deposits shall be received by the association.” The statute authorizes the association to' adopt a constitution and by-laws regulating the assessment and collection of such sums of money as the parties have agreed to be specifically assessed, for incidental purposes, and for the payment of losses, but itdoes not authorize the forfeiture of a contract for non-compliance with the provision of a contract which it was not authorized to make, to wit, for the non-payment of a deposit in advance, to pay losses that may or may not after-'Wards occur. This by-law which forfeits the policy for non-pay ment of an annual deposit, not covered by a specific assessment, and which may not be needed to pay losses then due and in' *567 advance of any losses for whicb a member is liable to assessment, is the exercise of the power of forfeiture, not authorized by the statute.
Something has been said in argument, in favor of the comparative merits of the system of insurance based upon this plan of annual deposits in advance. We are not called upon to consider or determine the comparative merits of the vari■ous plans upon which companies are organized for insurance. The assessment plan authorized by the statutes under review •has been thought by the law-making power to be worthy of 'adoption in this state. It, doubtless, has its merits, and is entitled to equal regard before us, with any other ‘ plan sanctioned by law. While it may be wise, prudent, and within the scope of its authority, to require pre-payment of a premium or annual deposit by members, to be covered by specific assessments to pay expenses and losses which occur while they -are members, yet the scheme before us which requires such annual deposit from those who are then membei’s to accumulate a fund to pay losses after they have ceased to be such, or before they became members, is not insurance upon the assessment plan but upon the general plan of stock companies. The plan upon which this company is organized and doing business, may have much to commend it, if sanctioned by legislative authority. It is due to those engaged in the management of this corporation to say, that there is nothing to impeach their integrity and good faith, yet we are compelled to hold that they have misinterpreted the provisions of the law providing for insurance on the assessment plan, and that they have been doing business upon a plan unauthorized by these provisions of the statute.

Judgment of ouster.